UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

Civil Action No. 3:22-cv-00103-DJH

CC METALS AND ALLOYS, LLC,

    *Plaintiff*

v.

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY
(n/k/a AIG Specialty Insurance Company); and
FORTITUDE REINSURANCE COMPANY LTD.

    *Defendants*

---

**DEFENDANTS AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY AND FORTITUDE REINSURANCE COMPANY LTD.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.    INTRODUCTION

American International Specialty Lines Insurance Company ("AIG Specialty") and Fortitude Reinsurance Company Ltd. ("Fortitude Re")[1] (collectively, "Defendants") file this Partial Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and Article III of the U.S. Constitution. Specifically, Defendants move to dismiss Plaintiff's Third and Fourth Causes of Action alleging breach of the duty of good faith and fair dealing and violation of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA") because CCMA

---

[1] Fortitude Re filed a separate Motion to Dismiss for failure to state a claim for relief because each of Plaintiff's claims require that a contractual relationship exist between CCMA and Fortitude Re. Fortitude Re is not the insurer that issued the policy to CCMA; Fortitude Re reinsures the policy and, thus has no contractual relationship with and owes no contractual obligations to CCMA. Fortitude Re joins in this Motion in the alternative and in the event the Court denies its Motion to Dismiss.

1

fails to assert sufficient factual allegations to support an essential element of its claims: that Defendants acted with intent to harm or that their conduct was outrageous and recklessly indifferent to CCMA's rights. Under Kentucky law, to state a claim for bad faith (under common law or statute), the insurer's conduct must be so egregious as to warrant a punitive damages award. AIG Specialty's alleged conduct—even assuming the allegations are true—does not rise to that level of egregiousness. CCMA does little more than recite the elements and language in the UCSPA. Such conclusory allegations are insufficient to support claims of bad faith.

Defendants also move to dismiss the portions of Plaintiff's Claims that relate to a set of unidentified, speculative, future costs that have not been incurred or tendered to AIG Specialty. Plaintiff seeks a declaratory judgment that all future costs that may be incurred to comply with the Management Plan are covered under the Policy and a finding that AIG Specialty has breached the insurance contract, breached the duty of good faith and fair dealing and violated the UCSPA by refusing to provide an advisory coverage opinion and committing to pay all of those future costs. Because CCMA has not performed the work, incurred the costs, or tendered the costs in connection with the Management Plan and AIG Specialty has not accepted or denied coverage for the costs, there is no controversy between the parties. For those same reasons, CCMA has not suffered any concrete or actual damages. CCMA lacks standing to bring the claims, which are not ripe for adjudication in the first place.

## II.    FACTUAL BACKGROUND

CCMA alleges that it purchased the Pollution Legal Liability Select Clean-Up Cost Cap Insurance Policy No. EPP 7783997 (the "Policy") from AIG Specialty in 2003. Complaint ¶ 50;

An incomplete copy of the Policy is attached to Plaintiff's Complaint as Exhibit A.[2] The Policy provides select coverage for six different properties –five located in Niagara, New York, and one property located in Calvert City, Kentucky. Complaint Ex. A, Declarations Item 5A. The Policy includes nine different coverage parts (A, C, D, F, G, H, I, K, L); CCMA did not purchase Coverages B, E, and J. *Id.*, Declarations Item 3(a). This lawsuit arises out of costs incurred at the Calvert City, Kentucky location.

### A. Past Costs

CCMA alleges that the "Cost Cap" portion of the Policy (Coverages K and L) provides coverage for reasonable and necessary OM&M Expenditure Clean-Up Costs. *Id.* at ¶¶ 4-5, 105. CCMA alleges that it submitted costs for reimbursement under the Policy as OM&M Expenditure Clean-Up Costs in September 2020, which included routine maintenance costs for "pipe leak repairs and cleaning the stormwater drainage system." *Id.* at ¶¶ 67, 69. It alleges that in October, 2020, AIG Specialty denied some of these costs because they did not satisfy the definition of OM&M Expenditure Clean-Up Costs. Complaint ¶ 68. CCMA alleges that it disagreed with AIG Specialty's determination and sent a letter on November 16, 2020 providing additional information and disputing AIG Specialty's interpretation of the Policy. *Id.* at ¶ 71. It alleges that, over the next year, the parties continued to discuss the denial of coverage for the costs, that on September 14, 2021, it sent another letter formally disputing the denial, and that on October 27, 2021, AIG Specialty again responded with its coverage position and affirmatively stated it would not provide coverage for the unreimbursed maintenance costs. *Id.* at ¶¶ 72-75.

---

[2] "When a document is referred to in the complaint and is central to the plaintiff's claim […] the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). The copy of the Policy attached to the Complaint appears to be missing pages 4-23 of Table 8-1 of the Recommended Risk Reduction Plan document attached to Endorsement No. 2.

### B. Future Costs

CCMA alleges that on March 29, 2021, the KDEP requested CCMA submit a corrective action plan for the Calvert City Site and that CCMA gave notice of the request to AIG Specialty. Complaint ¶¶ 20, 21. According to CCMA, their contractor, LAN Associates, Inc. ("LAN") and CCMA prepared a corrective action plan ("Management Plan") which described its future plan to maintain the existing environmental controls and continue to manage in place the pollutants at the Site to eliminate the risk of exposure. *Id.* at ¶¶ 22, 23, 88. Prior the preparation of the Management Plan, CCMA alleges that it prepared and submitted to the KDEP a Site Characterization Report and Risk Assessment which documented the current environmental controls at the Site. *Id.* at ¶¶ 79-81. The KDEP approved the Site Characterization Report and Risk Assessment, thereby approving the adequacy of the environmental controls in place at the Site to manage in place the pollutants at the Site and eliminate risk of exposure. *Id.* at ¶ 84.

CCMA alleges that the Management Plan contains a number of reporting and other requirements, *id.* at ¶ 88, but does not identify any or all of the specific work to be performed or costs to be incurred under the Management Plan for which it seeks coverage.

After the Management Plan was prepared but before it was approved by the KDEP, CCMA alleges that it asked Defendants to assess whether the future work "proposed under the Management Plan" was covered under the Policy. *Id.* at ¶¶ 25-26, 90. CCMA alleges that AIG Specialty stated that it could not and would not provide a conclusive coverage determination for the "future costs" before the work was completed and all invoices and cost backup information had been submitted. *Id.* at ¶¶ 26, 93.

In the Complaint CCMA does not contend that the work associated with the Management Plan has been performed, does not contend that costs for work under the Management Plan have

4

been submitted to AIG Specialty, and does not even identify specific tasks that *will be performed* or the exact amount of the costs that *will be* incurred. To the contrary, it admits the work has not been performed and that costs are not known and have not been submitted. *Id.* at ¶¶ 25 (AIG Specialty refused to provide coverage "prior to the work being performed."); 126 (AIG Specialty "refused to commit to cover such costs incurred in the future"); 140 (AIG Specialty has "refused to pay and [sic] any such costs incurred in the future to comply with…the Management Plan."). CCMA takes issue with AIG Specialty's refusal to approve all future, yet unidentified, costs that may be "incurred pursuant to the Management Plan." *Id.* at ¶¶ 93, 94.

CCMA's Complaint asserts four causes of action. The causes of action relate to both the past costs and future costs—CCMA does not assert separate causes of action for each category of costs. With respect to the past, unreimbursed costs, CCMA seeks a declaratory judgment that the costs are covered OM&M Expenditure Clean-Up Costs. *Id.* at ¶¶ 187-189. With respect to future costs, CCMA seeks a declaratory judgment that the Policy does indeed cover the unidentified, speculative, potential future costs. *Id.*

CCMA asserts a cause of action for breach of contract claiming that Defendants breached the Policy by failing to pay the past costs and by refusing to provide an advisory opinion on future, undefined costs and committing to pay those costs. *Id.* at ¶¶ 26, 90. 193. Notably, CCMA fails to cite to a single policy provision requiring AIG Specialty to provide such an opinion.

CCMA asserts causes of action for breach of the duty of good faith and fair dealing and violation of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA") claiming that Defendants' refusal to provide coverage for the past costs and failure to "commit to approving *any* future costs" were both wrong and unreasonable. *Id.* at ¶¶ 125, 129, 138, 154, 179, 192, 201, 202.

5

CCMA further alleges that Defendants breached their duty of good faith and fair dealing by (a) failing to evaluate and confirm coverage for future costs under the Management Plan; (b) failing to cover Claims under the Remedial Plan (i.e., the past costs CCMA claims are OM&M Expenditure Clean-Up Costs); (c) misrepresenting the facts, Policy terms and conditions and law; (d) asserting unreasonable coverage positions and denials; (e) failing to timely pay the costs submitted (and future costs) when they were not reasonably in dispute; and (f) placing their own financial interest above their contractual obligation to the policyholder. Complaint at ¶ 197. It does not provide any factual allegations to support the conclusory statements in (c) through (f).

CCMA also concludes that Defendants violated subsections (1) through (8), and (12) through (13) of section 304.12-230 of the UCSPA. *Id* at ¶ 202. It does not assert any specific facts evidencing violations of these subsections.

It concludes that Defendants denied coverage for CCMA's costs "without a reasonable basis for doing so or have acted with reckless disregard to the rights of the insured," *Id.* at ¶ 204; that Defendants "lacked a reasonable basis to deny and delay payment and provide coverage of Plaintiff's claim, and Defendant[s]…knew or acted recklessly as to whether a reasonable basis existed to deny or delay payment…", *Id.* at ¶ 206; and that Defendants' conduct "constitutes reckless disregard for the rights of Plaintiff and constitutes gross negligence," *Id.* at 208. Again, CCMA provides no factual support or context for these statements.

### III.   ARGUMENT

**A.   CCMA Fails to State Facts Supporting an Essential Element of its Third Cause of Action for Breach of the Duty of Good Faith and Fair Dealing and Fourth Cause of Action for Violation of the Unfair Claims Settlement Practices Act.**

An essential element of both its Third Cause of Action and Fourth Cause of Action is that AIG Specialty's conduct is sufficiently outrageous, intentional or reckless to warrant punitive

damages. None of CCMA's factual allegations regarding Defendants' conduct—even assuming they are true—rise to the level of conduct warranting punitive damages. The Complaint's unsupported conclusory allegations and recitation of legal standards are insufficient to support the claims.

"To survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009)). When assessing a Motion to Dismiss, the Court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246–47 (6th Cir. 2012) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted).

"Kentucky recognizes four categories of bad faith claims that may be brought against insurance companies." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 197 (6th Cir. 2015). CCMA asserts two of them here. CCMA's Third Cause of Action is for breach of the duty

of good faith and fair dealing, referred to as a common law bad faith claim. *See id.*; *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 816 (E.D.Ky. 2013) ("Bad faith is generally described as 'an intentional tort which results from a breach of the implied contractual duty of good faith and fair dealing. […] [which] Kentucky courts have only recognized […] in the context of insurance contracts."). CCMA's Fourth Cause of Action is for violation of the UCSPA, which is referred to as a statutory bad faith claim. *State Auto*, 785 F.3d at 197 (referring to a violation of the UCSPA as a "statutory" bad faith claim).

Under Kentucky law:

> [a] single standard applies to all four categories of bad faith claims, which requires that the insured prove three elements: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*State Auto*, 785 F.3d at 197 (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)); *see also United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003); *Cobb King v. Liberty Mut. Ins. Co.*, 54 Fed. App'x 883, (6th Cir. 2003).

"A bad faith claim under Kentucky law is, essentially, a punitive action. The tort of bad faith is non-existent under our law, unless the underlying conduct is sufficient to warrant punitive damages." *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 739 (Ky. 2016); *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) ("before the cause of action [for bad faith] exists in the first place, there must be evidence sufficient to warrant punitive damages…."). This requirement, according to the Kentucky Supreme Court in *Hollaway*, is embodied in element three (i.e., that the insurer knew there was no reasonable basis for denying claim or acted with reckless disregard). *Id.*

8

To satisfy this element, there must be "sufficient evidence of intentional conduct or reckless disregard of the rights of an insured…." *Wittmer*, 864 S.W.2d at 890; *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003). "Evidence of mere negligence or failure to pay a claim in a timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead the element of malice or flagrant malfeasance must be shown." *Bult*, 183 S.W.3d at 186. With respect to any delay in payment, for example, the plaintiff must "present 'proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement….'" *Bowlin Grp. v. Rebennack*, 626 S.W.3d 177, 189 (Ky. Ct. App. 2020) (quoting *Motorist Mut. Ins. Co. v. Glass*, 966 S.W.2d 437, 453 (Ky. 1997)).

Thus, plaintiffs have a "'steep burden' … before a trial court should find the plaintiff to have brought a viable bad-faith claim." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021) (quoting *Wittmer*, 864 S.W.2d at 890). CCMA fails to meet that steep burden at the pleadings stage. Where a complaint alleges only bare conclusory allegations but no facts to support or evidence that the insurer's conduct rises to the level that would warrant punitive damages, Kentucky federal courts routinely dismiss claims for bad faith on a motion to dismiss. *See, e.g., Little v. Butler*, No. 7:19-CV-114, 2020 WL 2765762 (E.D.Ky. May 28, 2020) (dismissing complaint that made only bare legal conclusions and did not allege or support that the defendant insurer lacked a reasonable basis to deny Plaintiff's claim or knew or acted with reckless disregard as to the lack of such basis.); *Nationwide Mut. Fire Ins. Co. v. Castle*, No. 13-25, 2013 WL 5503056 (E.D.Ky. Oct. 2, 2013) (dismissing counterclaim for UCSPA because it asserted only "legal conclusions posing as facts"); *Anderson v. Std. Ins. Co.*, No. 3:14-CV-51, 2014 WL 5366117 (W.D. Ky. Oct. 21, 2014) (dismissing bad faith claims where the plaintiff

listed defendant's "acts or omissions" by referencing KRS 304.12-230 and alleging that defendant violated those requirements "with full knowledge … and reckless indifference.").

CCMA's Complaint does little more than assert legal conclusions that mirror the elements of a bad faith claim and language from the UCSPA statute. It does not assert a single *fact* regarding Defendants' conduct that would warrant a punitive damages award. As a result, CCMA's Third and Fourth Causes of Action fail to state a claim for common law and statutory bad faith. CCMA does not allege—even in a conclusory fashion—that Defendants acted outrageously, intentionally, or with "malice or flagrant malfeasance." It only concludes that Defendants "denied the claims of the Plaintiff without a reasonable basis for doing so or have acted with reckless disregard to the rights of the insured" and that Defendants "lacked a reasonable basis to deny and delay payment and provide coverage of Plaintiff's claim, and Defendant Insurers knew or acted recklessly as to whether a reasonable basis existed to deny or delay payment of her [*sic*] claim." Complaint, ¶¶ 204, 206, 208.[3] These paragraphs merely recite the elements of a bad faith claim and are insufficient to survive a Motion to Dismiss. *See Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). CCMA fails to assert any facts to support these conclusions.

The only *factual* allegations describing Defendants' allegedly "improper" conduct are that (1) in 2020, AIG Specialty denied coverage for routine maintenance costs to fix leaking pipes and clean the stormwater drains, Complaint ¶¶ 68-69, 197; and (2) AIG Specialty refused to commit to providing coverage and paying future, speculative, and yet-undetermined costs, Complaint ¶¶ 154, 197. CCMA disagrees with AIG Specialty's denial and refusal to commit to

---

[3] These conclusory allegations appear only on CCMA's statutory bad faith claim; it does not allege reckless disregard in support of its common law bad faith claim. *See* Complaint, ¶¶ 195-198.

10

pay future costs and alleges Defendants have acted unreasonably and committed bad faith. However, a breach of the Policy alone—even an unreasonable one—does not warrant punitive damages and is insufficient to support a bad faith claim. *Bult*, 183 S.W.3d at 186; *Wittmer*, 864 S.W.2d at 890. CCMA fails to include any allegations that would even suggest how Defendants' conduct was "reckless" or showed "reckless disregard" for its rights as it concludes in its Fourth Cause of Action. Instead, the Complaint describes a routine and transparent investigation by Defendants with additional follow-up with CCMA to clarify its positions under the Policy. *See* Complaint ¶¶ 68-75.

The remaining allegations regarding Defendants' conduct are conclusory and unsupported. For its statutory bad faith claim, like in *Anderson*, CCMA only concludes that Defendants violated the UCSPA and then cites to and restates the subsections of KRS 304.12-230 that it contends Defendants violated. *Compare Anderson*, 2014 WL 5366117 at *4 with Complaint at ¶¶ 200–208. CCMA provides no factual support for any of the alleged violations and thus the claim fails as a matter of law. Even so, violations of the statutory provisions are not enough—there must be evidence of conduct warranting punitive damages for a claim to survive. *Hollaway*, 497 S.W.3d at 739; *Wittmer*, 864 S.W.2d at 890. Again, no such conduct is alleged in the Complaint.

For its common law bad faith claim, CCMA alleges that Defendants misrepresented the facts, Policy terms, and law regarding CCMA's claims, but it fails to identify a single misrepresentation made. Complaint at ¶ 197. It alleges that Defendants failed to timely pay CCMA's claims when they were not reasonably in dispute, but it admits throughout its Complaint that AIG Specialty denied coverage for its past costs—those costs are clearly in dispute. Complaint at ¶ 197. Future costs have not been identified, let alone incurred or billed, so

11

there can be no delay in paying costs that do not exist and have not been submitted to Defendants. Even so, mere delay is insufficient to support a bad faith claim. *Bowlin Grp.*, 626 S.W.3d at 189. Lastly, CCMA alleges that Defendants have placed their own financial interest above their contractual obligations to the policyholder, but CCMA has not asserted any facts in support of this conclusion other than that coverage was denied for certain costs. Complaint at ¶ 197. Even if Defendants' coverage determination was wrong, mere negligence in denying the claim will not suffice. *Bult*, 183 S.W.3d at 186. CCMA has alleged no facts to suggest that the denial was motivated by Defendants' financial interests.

CCMA has failed to plead any facts suggesting Defendant's conduct was sufficiently outrageous or reckless as to "warrant punitive damages," relying only on unsupported conclusory allegations. Thus, CCMA fails to state a claim for common law and statutory bad faith. For these reasons, just as the courts in *Little*, *Castle*, and *Anderson* did, this Court should dismiss CCMA's Third and Fourth Causes of Action for common law and statutory bad faith.

**B.      Plaintiff's Claims Based on Future or Potential Costs Are Not Justiciable.**

"A claim is not amenable to the judicial process when it is filed too early (making it unripe), when it is filed too late (making it moot) or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008). Specifically, Article III Section 2 of the U.S. Constitution provides that federal courts shall only have jurisdiction over "cases and controversies." *Ky. Press Ass'n v. State*, 355 F. Spp. 2d 583, 858 (E.D.Ky. 2005); USCS Const. Art. III, § 2. In order to satisfy the "case or controversy" requirement, a plaintiff must have standing and its claims must be ripe. *Trump v. New York*, 141 S.Ct. 530, 535 (2020).

12

In order for the claim to be ripe, Plaintiff's case must not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). To establish standing, a plaintiff must have "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Id.* at 535 (quoting *Carney v. Adams*, 141 S.Ct. 493 (2020)); *see also Ky. Press Ass'n v. State*, 355 F. Supp. 2d 853, 858 (E.D.Ky. 2005) ("If the plaintiff does not have standing to sue, then the Court does not have jurisdiction over the matter because there is no 'case' or 'controversy'").

As currently pleaded, Plaintiff's Complaint seeks a declaration of coverage for unidentified, speculative, potential future costs that may be incurred to comply with the Management Plan, and asserts claims for breach of contract and common law and statutory bad faith arising out of Defendants' failure to (commit to) provide coverage for and pay these un-incurred, speculative costs. Because (a) whether or not these costs will be incurred and, if incurred, the nature and the amount of these future costs is unknown and contingent on future events, and (b) a denial of coverage has not occurred and cannot occur until Defendants receive information regarding the nature and amount of the costs, and may not even occur after the costs are evaluated, CCMA's claims are not ripe. Because CCMA has not paid any of these future costs and does not even know the nature and amount of these future costs, it has no concrete or particularized damage and, thus, no standing to bring these claims. All of CCMA's claims with respect to these future costs must be dismissed.

        **1.     Plaintiff's claims based on future costs are not ripe.**

"Ripeness, while related to the issue of standing, is a distinct inquiry that involves determining whether there is a substantial controversy between parties who have adverse legal interests." *Ky. Press Ass'n v. State*, 355 F. Supp. 2d 853, 858 (E.D.Ky. 2005). "A factor

13

highlighted by many courts [in determining ripeness] is the likelihood that the asserted injury or anticipated events will occur." *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689 (6th Cir. 1985). The Court shall apply a two-factor test in assessing ripeness: "(1) is the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? And (2) what is the hardship to the parties of withholding court consideration?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (cleaned up). Claims seeking advisory coverage opinions related to possible future events are particularly appropriate for dismissal. *See, e.g., Toledo Newspaper Unions-Blade Pension Trust Fund v. Fed. Ins. Co.*, No. 3:07 CV 2590, 2008 WL 11433474, at *1 (N.D. Ohio Feb. 28, 2008), *aff'd* 318 Fed. App'x. 347 (6th Cir. 2009) (granting insurer's motion to dismiss declaratory judgment action as unripe because plaintiff was "seeking an impermissible advisory opinion concerning issues that *could*, in the future, bear fruit"). A claim is not ripe if it requires the court to "[a]nswer[] difficult legal questions before they arise and before the courts know how they will arise". *Warshak*, 532 F.3d at 526. That is precisely what CCMA asks the Court to do here.

CCMA's claims do not arise in a concrete factual context; they are contingent upon the occurrence of *multiple* future events, which may or may not occur, and no actual controversy has arisen. First, all of the claims presume that CCMA will actually incur future costs "pursuant to the Management Plan." Complaint ¶¶ 93-94. Whether future costs will be incurred in the first place and if so, the nature and amount of the costs/work, is contingent upon future events and developments which are not guaranteed to occur. CCMA's Complaint vaguely describes the future costs as those that will be "incurred pursuant to the Management Plan." Complaint ¶¶ 93-94. As CCMA alleges, the purpose of the Management Plan is to "maintain the existing

14

environmental controls" and to continue to manage in place the pollutants present. *Id.* at ¶¶ 22, 23, 88.

CCMA's Complaint does not identify a concrete or specific list of future work or costs because, at this time, it is unclear what costs/work, if any, will even be necessary to maintain the environmental controls or continue to manage the pollutants in place. As CCMA alleges in the Complaint, the current environmental controls at the Site were approved by the KDEP when it approved the Site Characterization and Risk Assessment. Complaint ¶¶ 79-81. Thus, future costs are contingent on some failure of or issue with the current environmental controls performing as intended. Because such issues or failures are not guaranteed, it is unclear whether future costs or work will be necessary. Even if issues or failures arise, the type of issues and environmental controls affected are not known and thus CCMA does not know what future work or costs will be incurred or the amount of those costs.

Second, the claims require a dispute as to coverage between the parties, which is contingent upon Defendants denying coverage: the declaratory judgment claim requires an actual controversy, which will only arise if the parties disagree as to coverage and the breach of contract and bad faith claims require (or presume) Defendants denied or will deny coverage for the future costs. Defendants' coverage decision will, in turn, depend on the nature of the work/costs and the amount of the costs. Even if the KDEP's request qualifies as a "Claim,"[4] and regardless of whether the relevant coverage is Coverage A, D, K, or L,[5] coverage for the costs

---

[4] Defendants dispute that any requests made by the KDEP constitute a "Claim" under the Policy.
[5] CCMA did not purchase Coverage B and or E. Coverage F is clearly inapplicable. It covers "Property Damage" which, while it includes "Natural Resource Damage" as alleged by CCMA, requires actual physical injury to or destruction of property, water, wildlife and the like. The purpose of the Management Plan is to continue to prevent the migration and seepage of contamination into the Tennessee River. Thus, costs are to prevent "Property Damage"/"Natural Resource Damages" not as a result of "Property Damage"/"Natural Resource Damages."

15

incurred requires that they meet the definition of "Clean-Up Costs," which requires that the costs be "reasonable and necessary" and satisfy other various requirements depending on the type of work and costs. Until the nature and amount of costs is known, Defendants cannot evaluate coverage and, until they do, it is unclear whether they will, in fact, deny coverage. The same is true for the Court: a declaration of coverage or evaluation of Defendants' conduct by the Court is not only premature but impossible until the costs are known and incurred because it cannot properly evaluate the issues.

No hardship will result if the Court withholds its consideration related to future costs. CCMA has not incurred or paid any of these future costs and, thus, withholding consideration at this time will cause no harm or detriment. If and when costs are incurred, and if AIG Specialty denies coverage for those costs, the Complaint can be amended to assert a claim for costs actually incurred pursuant to the Management Plan. While it may be advantageous for Plaintiff to join all present and possible future claims in a single proceeding, "joinder is not justified when it allows the court to engage in resolution of hypothetical and abstract questions." *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 697 (6th Cir. 1985).

On the other hand, ruling on coverage issues or the propriety of a possible future denial of coverage based on hypothetical situations and without accurate or complete information regarding the costs that may be incurred would be unfair and prejudicial to Defendants. Neither AIG Specialty, nor this Court, should guess whether hypothetical future costs satisfy the requirements of the definition of "Clean-Up Costs" under the Policy.

There is no present controversy or dispute between the parties. CCMA's claims for future costs are all contingent on not one but multiple future events which may or may not take place. Until those events take place, the claims are not ripe and the Court does not even have the facts

necessary to properly resolve the claims. No costs have been incurred, no costs have been tendered, and no denial has occurred. Instead, CCMA is asking this Court to render an advisory opinion regarding future events of uncertain scope. *Toledo Newspaper Unions-Blade Pension Trust Fund v. Fed. Ins. Co.*, 2008 WL 11433474, at *1, *aff'd* 318 Fed. App'x. 347 (6th Cir. 2009) CCMA's claims as to future costs should be dismissed.

### 2. Plaintiff lacks standing.

To have standing, a plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "[P]arties do not have standing to obtain rulings on matters that remain hypothetical or conjectural." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (*J. Thomas, dissenting*). "[T]he declaratory judgment procedure cannot be used to obtain advanced rulings on matters that would be addressed in a future case of actual controversy." *Id.*

CCMA has not suffered any damages as a result of its claims for future costs because (1) it has not incurred or paid the future costs pled in its Complaint and (2) AIG Specialty has not denied coverage for any future costs. Any potential injury is purely hypothetical for the same reasons: in order to suffer damage, it must have actually incurred costs, which may or may not occur for the reasons discussed in Section B.1., and Defendants must have denied the costs, which may or may not occur and will depend on the nature and amount of costs actually incurred, if any. CCMA cannot even identify when the costs may be incurred. As such, Plaintiff lacks standing to pursue all of its claims as they relate to future costs.[6]

---

[6] The fact that Plaintiff has not yet suffered any damages related to future costs and that AIG Specialty has not yet denied coverage for any future costs is also fatal to Plaintiff's breach of contract and bad faith claims because damages and/or denial is an essential element to each. A

Because CCMA does not assert separate causes of action for future costs and past costs, referring to them collectively as the "CCMA Claims" in each of its causes of action, if the Court grants this portion of Defendants' motion to dismiss, Defendants requests that the Court dismiss the Complaint with leave to amend only to remove all allegations and requests for relief related to future, un-incurred costs that have not been denied by AIG Specialty, including allegations related to the "KDEP Claim" and the Management Plan. Alternatively, Defendants request that the Court issue an order striking the paragraphs in the Complaint that refer to or encompass allegations and requests for relief related to un-incurred future costs that have not been denied by AIG Specialty, including allegations related to the KDEP Claim and the Management Plan. Those paragraphs are: 25, 26, 90-95, 126, 148-182, and 201. Paragraphs 27, 75, 135, 136, 147, 197, 201, and 202 contain allegations and requests related to both past and future costs, and Defendants request that the portions referring to the KDEP Claim, costs pursuant to the Management Plan or future costs be stricken.

### IV.     CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, AIG Specialty and Fortitude Re respectfully request this Court grant their Motion, and (1) dismiss with prejudice CCMA's Cause of Action Three and Cause of Action Four; and (2) dismiss with prejudice all Causes of Action for future costs that have not yet been incurred by CCMA and denied by AIG Specialty by dismissing the Complaint with leave for CCMA to amend in order to remove all allegations and requests for relief related to

---

breach of contract claim requires a plaintiff to prove "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). Bad faith claims require the plaintiff show that the insurer is obligated to pay the claim under the policy and denied the claim without a reasonable basis in law or fact. *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021).

future, un-incurred costs that have not been denied by AIG Specialty, including allegations related to the KDEP Claim and the Management Plan. Alternatively, Defendants request that the Court dismiss with prejudice all Causes of Action for future costs that have not yet been incurred by CCMA and denied by AIG Specialty by striking paragraphs 25, 26, 90-95, 126, 148-182, and 201 and the portions of paragraphs 27, 75, 135, 136, 147, 197, 201, and 202 that refer to future, un-incurred costs not denied by AIG Specialty, the KDEP Claim, or the Management Plan .

Dated:  April 22, 2022

        s/ Michael C. Merrick
Michael C. Merrick
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, Fourth Floor
Louisville, Kentucky 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
mmerrick@kaplanjohnsonlaw.com

and

HUSCH BLACKWELL LLP

Scott L. Davis (*pro hac vice forthcoming*)
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Telephone: 214-999-6184
Facsimile: 214-999-6170
scott.davis@huschblackwell.com

Tyler J. Scott (*pro hac vice forthcoming*)
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: 816-983-8274
Facsimile: 816-983-8080
tyler.scott@huschblackwell.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

      The undersigned counsel hereby certifies that on April 22, 2022, the foregoing was served on all counsel of record via the Court's electronic filing system.

                                                s/ Michael C. Merrick
                                                *Counsel for Defendants*